DONALD VERBANAC,

        Plaintiff,

    v.                                                   Case No. 09-C-438

JOEL CLAUSING, KEITH UHAN, and the WASHINGTON
COUNTY SHERIFF'S DEPARTMENT[1]

        Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       Plaintiff Donald Verbanac, an inmate at Stanley Correctional Institution currently serving a sentence for second-degree sexual assault of a child, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against the Washington County Sheriff's Department and Washington County Sheriff Deputies Joel Clausing and Keith Uhan. Verbanac claims that the deputies violated his Fourth Amendment rights by illegally entering his home without a warrant, arresting him without probable cause and failing to obtain a judicial determination of probable cause within 48 hours of his arrest. The case is before me on defendants' motion for summary judgment. For the reasons that follow, the motion will be granted in part and denied in part.

---

[1]The Court is amending the caption to include Defendants Clausing's and Uhan's first names which were not originally provided by Plaintiff.

# I. BACKGROUND

On September 19, 2007, at approximately 4 a.m. Washington County Sheriff Deputy Keith Uhan was dispatched to a residence in Newburg, Wisconsin to investigate a report of a sexual assault of a fifteen-year-old female. Upon his arrival Deputy Uhan met with an adult female, her daughter Erin, and her daughter's friend (hereinafter, "Jane"), both of whom were fifteen years old. The adult female reported that her daughter, who had been staying at Verbanac's residence, telephoned her earlier that morning and reported that Jane had been sexually assaulted by Verbanac. Another friend who had also been at the house drove her daughter and Jane to the adult female's house, and she called police. Jane confirmed the assault and was taken to the hospital. She subsequently gave a written statement in which she recounted that she had consumed approximately twelve beers that had been provided by Verbanac and then went to bed. She awoke to find Verbanac's head between her legs inserting his tongue into her vagina. (Aff. of Joel W. Clausing ¶ 7, Ex. 1.) Deputy Uhan also had Erin, whom he states had been living with Verbanac for the past four-to-six weeks, sign a written consent to search Verbanac's home. (Id. ¶ 12, Ex. 2.)

Deputies Uhan and Clausing then left the hospital and proceeded to Verbanac's home. The deputies' account of what happened upon their arrival differs markedly from Verbanac's. Deputies Uhan and Clausing state that Verbanac met them outside his house shortly after 10:00 a.m. (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 19.) Deputy Clausing asked Verbanac to accompany them to the sheriff's department, but Verbanac refused. Verbanac did agree to talk with the deputies at his home, however. (DPFOF ¶ 20.) Verbanac initially stated he could not recall anything from the previous evening because he was too drunk, but later confirmed that two teenage girls were at his residence drinking. (*Id.* ¶ 21.) Deputy Clausing then asked Verbanac if he and Deputy Uhan could

2

search Verbanac's residence. Verbanac refused. Deputy Clausing then showed Verbanac the consent form Erin had signed and told Verbanac he was under arrest for sexual assault. (*Id.* ¶ 22.) Deputies Uhan and Clausing claim that after Verbanac was handcuffed, he changed his mind and consented to their searching his house. They entered, located the pajama bottoms that Jane had been wearing the night before, and left the premises with Verbanac in custody. (Id. ¶¶ 24-25.)

Verbanac, on the other hand, states that the defendants arrested him inside his home, not outside, and denies that he had ever given them permission to search his home. (Aff. of Donald Verbanac ¶ 10.) Verbanac also denies he ever told the deputies he was too drunk to remember anything about the night before, or that he confirmed that two teenage girls were drinking at his home. (*Id.* ¶ 7.) Verbanac also disputes the information allegedly provided by Jane and Erin. He denies that they had ever been to his home, that he had given them beer, or that Jane had awoken with his head between her legs. (*Id.* ¶ 2.) Verbanac also denied that Erin had lived with him for four-to-six weeks and claimed that she lacked authority to consent to a search of his home. (*Id.* ¶ 5.)

Deputy Clausing's affidavit further states that following his arrest, Verbanac admitted that while Jane was sleeping he put his head under the covers and started having oral sex with her (DPFOF ¶ 29), an assertion Verbanac also disputes. However, Verbanac does not dispute Deputy Clausing's assertion that he was booked into the Washington County Jail on September 19, 2007, shortly after noon and released on a signature bond at 4:40 p.m. the following day. Verbanac also does not dispute the fact that he was later found guilty by a jury of sexual assault of a child and is currently serving his sentence.

3

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id*. at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id*. at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id*. at 247-48.

"Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Warrantless Entry**

Verbanac first claims that Deputies Clausing and Uhan entered his home without probable cause to believe he committed a crime, without his consent and without a warrant, and then placed him under arrest and conducted a search. He contends that their actions violated his rights under the Fourth Amendment to the United States Constitution and seeks damages of $250,000 from each of the deputies and the Washington County Sheriff's Department.

The Fourth Amendment, by its terms, protects against unreasonable searches and seizures, and further provides that no warrant shall issue except upon a showing of probable cause. U.S. Const. amend. IV. The Supreme Court has construed the Fourth Amendment to require probable cause to believe a person has committed a crime before a law enforcement officer may place such person under arrest. *Henry v. United States*, 361 U.S. 98, 100-101 (1959). Generally, a warrant is not required to place a person under arrest. *United States v. Watson*, 423 U.S. 411, 416-17 (1976). However, absent consent or exigent circumstances, a warrant is required to enter a person's home to effect a lawful arrest, even if the officer has probable cause to believe the individual has committed a crime. *Payton v. New York*, 445 U.S. 573, 576 (1980).

"Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Draper v. United States*, 358 U.S. 307, 313 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)). Here, Deputies Clausing and Uhan clearly had probable cause to believe Verbanac had committed a felony. They had Jane's written statement describing the assault, corroborated in many respects by Erin and her mother. Thus, if the arrest occurred outside of

5

Verbanac's home, as Deputies Clausing and Uhan claim it did, it was lawful. However, Verbanac states in his affidavit that the arrest occurred inside his home and denies that he gave consent for the deputies to enter, thereby raising at least two factual disputes that cannot be resolved on summary judgment.²

The defendants argue, alternatively, that even if Verbanac did not consent, the deputies still had the consent of Erin. They note that a third party with common authority over a home may consent to search. "When someone shares an apartment or a home with another individual, he 'ordinarily assumes the risk that a co-tenant might consent to a search, at least to all common areas and those areas to which the other has access.'" *United States v. Brock*, 417 F.3d 692, 697 (7th Cir. 2005) (quoting *United States v. Ladell*, 127 F.3d 622, 624 (7th Cir. 1997)). Moreover, even if Erin had not been staying with him, as Verbanac claims, and therefore lacked actual authority, the deputies argue their actions were nevertheless lawful since they reasonably relied upon her claim that she did.

It is true that entry of a home based on a third party's consent can be lawful even when the third person lacked actual authority to consent if apparent authority existed:

> Apparent authority to consent to a search exists "when the facts available to an officer at the time of a search would allow a person of reasonable caution to believe that the consenting party had authority over the premises." *United States v. Ryerson*, 545 F.3d 483, 489 (7th Cir. 2008) (citations omitted). The court considers what the officers knew at the time they sought consent, not facts that came to light after the search began. *United States v. Groves*, 470 F.3d 311, 319 (7th Cir. 2006). An

---

²Even if the arrest took place outside, that would still leave the question of whether the officers lawfully entered his home to conduct a search. Although the court did not address it in the screening order, Verbanac's complaint, liberally construed, also states a claim for unlawful entry to his home.

6

> officer has "a duty to inquire further as to a third party's authority to consent to a search, if the surrounding circumstances make that person's authority questionable." *United States v. Goins*, 437 F.3d 644, 648 (7th Cir. 2006).

*United States v. Alexander*, 573 F.3d 465, 474 (7th Cir. 2009); *see also Illinois v. Rodriguez*, 497 U.S. 177, 186-189 (1990) (relevant inquiry is whether or not the officers reasonably believed that the third party providing consent had authority to do so). But here the record is not sufficiently developed to permit me to conclude as a matter of law that apparent authority existed.

The record contains no statement from Erin in which she states she had been living with Verbanac for four-to-six weeks; only Deputy Clausing's affidavit in which he states in describing the consent form that it was "signed by the victim's friend, who had been living at the premises for the past 4-6 weeks." (Clausing Aff. ¶ 12.) There is no indication how Deputy Clausing knew she had been staying there for four-to-six weeks. Deputy Uhan's affidavit states that Erin's mother stated her daughter "had been staying at the residence" (Uhan Aff. ¶ 7), but does not say how long she was there or describe the circumstances. Verbanac, on the other hand, denies that Erin ever lived at his house, notes that she was a juvenile and states that she had no clothes there or key to gain entry. (Verbanac Aff. ¶¶ 5, 11, 12.) There is no indication that either deputy questioned Erin about the surrounding circumstances so as to allow them to assess whether a claim she had authority to permit them to enter Verbanac's home was reasonable. Indeed, there is no indication that Erin even thought she had such authority; the deputies simply assumed from the fact she had been staying there that she did. Without more, I am unable to determine that the deputies' reliance on Erin's consent, even if she actually told them she stayed with Verbanac for four-to-six weeks, was reasonable.

7

Even more important than the question of whether Erin had authority to consent, however, is the fact that Verbanac was present and expressly refused to give consent for the deputies to enter his home. In *Georgia v. Randolph*, 547 U.S. 103 (2006), the Supreme Court held that a stated refusal to permit entry by a physically present co-occupant prevails over the consent to search by the other co-occupant and renders the warrantless search unreasonable and invalid as it affects the non-consenting co-occupant. Clarifying the fine line it was drawing, the Court explained, "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." *Id.* at 121. In *Randolph*, the third party consent was given by the defendant's estranged wife who was present at the home. Here, the third party consent was from a juvenile who wasn't even present. Given these facts and in light of *Randolph*, Erin's consent was ineffective regardless of whether she was staying with Verbanac.

The defendants next argue that the entry by Deputies Clausing and Uhan was justified by the exigent circumstances they confronted. Deputy Clausing states in his affidavit that he believed that Jane had been wearing pajamas at the time of the assault that were likely to be found in the house. He also believed that Verbanac would likely destroy such evidence if given the chance. (Clausing Aff. ¶¶ 16, 17.) The defendants therefore contend that even without the consent of Verbanac or Erin, the possibility that Verbanac would destroy evidence, along with the gravity of the offense, justified the Deputies' immediate entry without a warrant.

It is true that a "warrantless entry by criminal law enforcement officials may be legal where there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978). It is also true that the need to prevent the

8

destruction of evidence of a serous crime has been held to constitute such a compelling need. *United States v. Fiasche*, 520 F.3d 694, 698 (7th Cir. 2008). Here, however, the record does not show a compelling need for official action and no time to secure a warrant.

In determining whether exigent circumstances exist, the court must analyze the situation from the perspective of the officers at the scene. The test is an objective one: "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). The question that arises here then is whether the circumstances were such that a reasonable law enforcement officer would have believed that there was no time to secure a warrant and immediate entry was necessary to prevent the destruction of evidence. *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006).

This was not such a case. By the time Deputies Clausen and Uhan entered Verbanac's home, they had already placed him in custody. He was not in a position to destroy the pajamas or any other evidence that might have been found in the house. *See Vale v. Louisiana*, 399 U.S. 30 (1970) (rejecting claim that search of house justified by need to prevent destruction of drugs when defendant occupant arrested on street outside and arresting officers satisfied themselves there was no one else inside). Here there was no reason to believe anyone else was on the premises who would or could have destroyed the pajamas on his behalf, and unlike alcohol in a person's blood, clothing does not metabolize over time. *Compare Schmerber v. California*, 384 U.S. 757, 770-71 (1966) (holding that compelled blood test for alcohol following the defendant's arrest for driving while intoxicated did not violate his Fourth Amendment right against unreasonable searches and

9

seizures where it was shown that delay in obtaining the blood would have resulted in the loss of evidence, i.e., dissipation of alcohol in the blood). Under these circumstances, more than sufficient time was available to obtain a warrant. The failure to do so cannot be justified by exigent circumstances.

Finally, the Deputies argue that they are immune from liability to Verbanac because they acted in good faith. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court has already determined that there is evidence that supports Verbanac's claim that his Fourth Amendment rights were violated by the deputies' warrantless entry to his home. The defense of qualified immunity requires the court to determine whether the law was clearly established such that a reasonable law enforcement officer would have known that the actions taken violated that right. Of course, the general right to be free from unreasonable entries to one's home is clearly established. More, however, is required:

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). In determining whether a right is clearly established, the court must look to controlling Supreme Court and Seventh Circuit precedent. *Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009).

10

The law governing the specific conduct at issue in this case was clearly established at the time Deputies Clausing and Uhan entered Verbanac's home. The requirement for a warrant to effect an arrest in a person's home was established in *Payton v New York* some thirty years ago. *Vale v. Louisiana*'s rejection of exigent circumstances as a justification under almost identical circumstances is forty years old. And the Supreme Court issued its holding in *Randolph* that third party consent of a co-occupant is ineffective against an objecting occupant approximately eighteen months before Deputies Clausing and Uhan entered Verbanac's home. If Verbanac's version of the facts is true, the deputies are not immune and may be liable for violation of his Fourth Amendment rights. It thus appears that a trial will be needed to resolve the factual disputes that remain as to that claim against Deputies Clausing and Uhan.

The same is not true as to the Washington County Sheriff's Department, however. The Washington County Sheriff's Department is not a legal entity separable from the county government which it serves and therefore, not subject to suit. *See Whiting v. Marathon County Sheriff's Dep't*, 382 F.3d 700, 704 (7th Cir.2004). Although Washington County would be a suable entity, Verbanac has not named the County as a party, nor has he alleged that the illegal entry to his home was pursuant to an official policy, widespread custom, or deliberate act of a county decision-maker. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Accordingly, he has failed to state any claim against Washington County, and any request to substitute the County for the Sheriff's Department would be denied as futile. Summary judgment will therefore be granted on the claim as to the Washington County Sheriff's Department. It is denied as to Deputies Clausing and Uhan.

### C. Judicial Determination of Probable Cause

Summary judgment will also be granted on Verbanac's claim that he was denied a prompt judicial determination of probable cause following his warrantless arrest. In *Gerstein v. Pugh*, 420

11

U.S. 103 (1975), the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest. In *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Court held that, as a general matter, a judicial probable cause determination is prompt for purposes of the Fourth Amendment if it occurs within forty-eight hours after arrest or detention. "Where a defendant does not receive a probable cause determination within forty-eight hours, the burden shifts to the government to justify the delay." *United States v. Kirkland*, 567 F.3d 316, 319 (7th Cir. 2009) (citing *Riverside*, 500 U.S. at 57).

The undisputed evidence demonstrates that Verbanac was arrested sometime around 10:00 a.m. on September 19, 2007. He was booked into the Washington County Jail at about 12:09 p.m. the same day, and released the following day on a signature bond at 4:41 p.m., well within *Riverside*'s forty-eight hour time limit. Furthermore, there is no evidence that Deputies Clausing or Uhan had any responsibility for Verbanac once they booked him into the jail at 12:09 p.m. on September 19, and Verbanac offers no evidence that the delay was due to any reason other than routine court scheduling. Given the fact that Verbanac was seen by a judge well within forty-eight hours and the absence of evidence that the short delay before he was taken before a judge was motivated by ill will or other improper purposes, summary judgment is appropriate.

### III. CONCLUSION

Disputed issues of fact preclude entry of summary judgment on Verbanac's claim that Deputies Clausing and Uhan unlawfully entered his house in violation of his Fourth Amendment rights on September 19, 2007. The defendants' motion for summary judgment is therefore denied

12

as to that claim against those defendants. The motion is granted, however, as to Verbanac's claim that he was denied a prompt probable cause determination and on all claims against the Washington County Sheriff's Department. The Clerk is directed to place this matter on the Court's calendar for a Rule 16 status/scheduling conference within the next thirty days. *See* Fed. R. Civ. P. 16. Counsel and Mr. Verbanac may appear by telephone.

  Dated this   20th   day of January, 2010.

                 s/ William C. Griesbach
                 WILLIAM C. GRIESBACH
                 United States District Judge